```
**********************************************************
        IN THE UNITED STATES DISTRICT COURT
        FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

BOROUGH OF MOOSIC, et.al. :   CIVIL ACTION-LAW
          Plaintiff

                          :

                              JURY TRIAL DEMANDED

     vs.                  :


DARWIN SELECT INSURANCE   :        assigned
COMPANY, et.al.         Honorable Robert D. Mariani
          Defendant     :    No. 11 CV 01689
**********************************************************
        BRIEF IN OPPOSITION TO PLAINTIFF'S

             MOTION TO DISMISS

**********************************************************
```

By: JOHN J. BRAZIL, JR., ESQUIRE
I.D. No. 35508
310 Adams Avenue
Suite 200
Scranton, PA 18503
Phone: (570) 343-2431
Fax: (570) 343-2433
Email: brazillaw@roadrunner.com

# TABLE OF CONTENTS

Page

I.   COUNTER INTRODUCTION................ 1

II.  COUNTER FACTUAL
     BACKGROUND........................ 1

III. LEGAL STANDARD.................... 5

     A. MOTION TO DISMISS............... 5
     B. INTERPRETATION OF............... 6
C. DUTY TO DEFEND.................. 8

IV   COUNTER STATEMENT OF THE QUESTIONS

     A. WHETHER OR NOT LETTERS REGARDING ZONING
     ISSUES, BUT WHICH DO NOT CONSTITUTE A LEGAL
     CLAIM CAN BE CONSIDERED  A PRIOR CLAIM OR
     RELATED CLAIM UNDER TERMS OF THE POLICY?....11

     B. WHETHER THE INTERPRETATION OF THE POLICY
     PROPOSED BY DARWIN RENDERS THE POLICY
     AMBIGUOUS?..................................16

     C.  WHETHER OR NOT THE DOCTRINE OF COLLATERAL
     ESTOPPEL BARS THE PRESENT ACTION BASED UPON A
     CASUAL REFERENCE IN MOTION TO DISMISS AND AN
     ORDER IN THE UNDERLYING ACTION?.............24

     D. WHETHER THE PLAINTIFF HAS ALLEGED
     SUFFICIENT  AT THIS STAGE TO ESTABLISH BAD
     FAITH UNDER THE TERMS OF THE POLICY?........26

.

V.   CONCLUSION...........................28

VI   CERTIFICATE OF SERVICE...............29

i

# TABLE OF AUTHORITIES

**Cases**                                               **Page(s)**

*Air Products & Chemical, Inc. v. Hartford Accident & Indemnity Co.*,
     25 F.3d 177, 179 ( 3d Cir. 1994 )................................................ 10

*Angelico v. Lehigh Valley Hospital*,
     184 F.3d 268, 277 ( 3d Cir. 1999 )................................................ 25

*Bensalem Township v. International Surplus Lines Insurance Co.*,
     145 F.R.D. 387 ( E.D. Pa. 1993 )................................................ 11,12

*Bensalem Township v. Western World Insurance Co.*,
     609 F.Supp. 1343 ( E.D. Pa. 1985 )................................................ 13,14

*Biborosch v. Transamerica Insurance Co.*,
     603 A.2d 1050 ( Pa. Super. 1992 )......................................... 10.

*Britamco Underwriters, Inc. v. C.J.H. Inc.*,
     845 F.Supp. 1090, 1094 ( E.D. 1994 )....................................... 9

*Colburn v. Upper Darby Township*,
     838 F.2d 663, 665-66 ( 3d Cir. 1998 )................................... 5

*Curay-Cramer v. Ursuline Academy of Wilmington, Del., Inc.*,
     450 F.3d 130, 133 ( 3d Cir. 2006 )...................................... 6

*Donegal Mutual Insurance Co. v. Long*,
     564 A.2d 937 ( Pa. Super. 1989 )........................................... 7

*Echevarria v. Unitron Direct Insurance Co.*,
     2003 U.S. Dist LEXIS 4680 (E.D. 2003)........................... 27

*Erie Insurance Exch. v. Transamerica Insurance Co.*,
533 A.2d 13636 ( Pa. 1987 )..............................................
9

ii

*Estate of Bailey by Oare v. County of York*,
768 F.2d 503, 506 ( 3d Cir. 1985 )...................................    5

*Gedeon v. State Farm Mutual Auto Insurance Co.*,
188 A.2d 320 ( Pa. 1963 )..................................................    9

*General Accident Insurance Co. of America v. Allen*,
692 A.2d 1089, 1091 ( Pa. 1997 ).....................................    10

*General Refractories Co. v. Travelers Insurance Co.*,
1988 U. S. Dist. LEXIS 14340 (E.D. 1988)......................    6

*Heffernan & Co. v. Hartford Insurance Co.*,
614 A.2d 295 ( Pa. Super. 1992 ).....................................    9

*Helstoski v. Goldstein*,
552 F.2d 564, 565 (3d Cir. 1977 ).....................................    5

*Home Insurance Co. v. Law Office of Jonathan Deyoun*,
32 F.Supp. 2d 219 ( E.D. 1998 )...........................................    15

*Hutchison v. Sunbeam Coal Corp.*,
519 A.2d 385 ( Pa. 1986 ).....................................................    8

*Klinger v. State Farm Mutual Insurance Co.*,
115 F.3d 230 ( 3d Cir. 1997 )...................................................    27

*Lehigh Valley Health Networks v. Executive Risk Indemnity*,
2001 U.S. Dist. LEXIS 73 (E.D. 2001)................................. 15,19,
25

*Lititz Mutual Insurance Co. v. Steely*,
785 A.2d 975 ( Pa. 2001 )........................................................
7.

*Little v. MGIC Indemnity Corp.*,
836 F.2d 789 ( 3d Cir. 1987 )................................................ 8

*Madison Contruction Co. v. Harleysville Mutual Insurance Co.*,
735 A.2d 100, 106 ( Pa. 1999 )................................................
7,8

iii

*Mohn v. American Casualty Co. of Reading*,
326 A.2d 346, 352 ( Pa. 1974 )............................................ 7,8

*Morse v. Lower Merion School Dist.*,
132 F.3d 902, 906 ( 3d Cir. 1997)........................................ 6

*Nationwide Mutual Insurance Co. v. Shank*,
951 F.Supp. 68 ( E.D. Pa. 1997 ), app. dismissed without op.,
127 F.3d 1096 ( 3d Cir.1997)................................................ 10

*Oshiver v. Levin, Fishbein, Sedran & Berman*,
38 F.3d 1380, 1384 n.2 ( 3d Cir. 1994 )................................ 6

*Penn Tank Lines, Inc. v. Liberty Surplus Insurance Co.*,
2011 U.S. Dist. LEXIS 57331................................................ 15

*QBE Insurance Corp. v. M & S Landis Corp.*,
915 A.2d 122 ( Pa. Super. 2007 )........................................... 11

*Standard Venetian Blind Co. v. American Empire Insurance Co.*,
469 A.2d 563, 567 ( Pa. 1983 )................................................ 7

*Terra Nova Insurance Co. v. 900 Bar, Inc.*,
887 F.2d 1213, 1227 ( 3d Cir. 1989 )..................................... 9

*United Service Auto Association vs. Elitzky*,
517 A.2d 982 ( 1986 )............................................................
6,7

*Western World Insurance Co. v. Reliance Insurance Co.*,
892 F.Supp. 659 ( M.D. Pa. 1995 )........................................ 10

*Yonkers v. Donora Borough*,
702 A.2d 618 ( Pa. Cmwlth. 1997 )........................................ 24

*Younis Bros. Co. v. Cigna Worldwide Insurance Co.*,
899 F.Supp. 1385, 1398 ( E.D. 1995 )
Aff'd 91 F.3d 13 (3d Cir. 1996 )............................................. 18

iv

STATUTES

Federal Rule Civil Procedure 12(b).(6).................................. 5

42 Pa. C.S. Se. 8371................................................................
27

v

**COUNTER INTRODUCTION**

The present action was filed against the Defendants, (hereinafter referred to as Darwin), relative to their failure to provide  defense and indemnity coverage for a civil rights action, (hereinafter referred to as Underlying Action), filed against the Borough of Moosic, certain individuals, and related entities. (hereinafter referred to as Moosic)

It is necessary to note that in the Introduction of the Darwin's memorandum, they suggest or imply that a motion to dismiss filed in the Underlying Action and a subsequent decision somehow determines or establishes as a fact the legal issues presented in the present controversy.  This is certainly disputed as  will be discussed under argument C.

**COUNTER FACTUAL BACKGROUND**

The background as set forth by Darwin in their Brief, while not being verbatim, represent the factual background of the underlying complaint as set forth in Judge Munley's opinion on the Motion to Dismiss in the

Underlying Action; which was, of course, necessary when ruling on a Motion to Dismiss.

It is important to note that in Darwins' memorandum, under the section titled Policy, Darwin asserts that the inception date of the policy is August 1, 2010. That is simply not the case. Specifically, as part of the motion, Darwin attaches Exhibit B, which is the denial letter from Darwin. On pages 6 and 7 of exhibit B, Darwin sets forth the inception period of the policy as August 1, 2006. Further Darwin sets forth the provisions in the policy, which, in fact, established the inception date of the policy. Also, in Footnote Number 1 on the same page, Darwin again reasserts that the inception date of the policy as August 1, 2006.

The specific allegations in this matter, as it relates to a determination of whether Darwin should be providing defense and indemnity coverage, are indicated in Paragraphs 32, 34, 35, 40, 42 and 43. These are essentially letters complaining about zoning violations.

Paragraph 32 states;

32, On August 5, 2005 DR. ZALOGA sent a petition signed by eight of PLAINTIFFS' neighbors to John Segilia, then-Mayor of Moosic Borough("Segilia" now deceased), MERCATILI, HARRISON, and COMMISSION members to publicly protest the significant nuisance and zoning violation committed by Jack Williams.

This letter sent to the Borough is important, because Darwin asserts this is the first time a related claim was first made against the Borough. At the bottom of page 5 of Exhibit B, Darwin writes.

"Therefore, based on Policy Section II, Definition (P) and Policy Section IV, Condition (F)(4), this matter constitutes a single claim against Insureds for a public Officials Wrongful Act first made on August 5, 2005."

The remaining pre-inception date allegations are complaints about a third party, a request to investigate, a request to enter a written denial and a belief by the Author that the Borough was not enforcing its zoning ordinance.

What is interesting to note relative to the above allegations of the Complaint which occurred prior to the inception period of the policy, is that they are not a lawsuit, they are not a claim for damages, they are not a request or suggestion of a claim for damages, they do not

3

assert any violations of any party's civil rights, and they do not request any money from the Borough. In essence, they are complaints opposing a land development and a request to the Borough to have them more aggressively pursue certain violations against a Third Party.

What is important, is Darwin does not assert any of the above letters represented a Loss under the policy. Nor does Darwin establish or support that the six letters written were a claim or a wrongful act.

The genesis of the civil rights action and the factual basis for the allegations for the civil rights action all occurred after the inception period. Paragraph 55 of the complaint alleges on May 8, 2007 Zaloga was not allowed to speak at a public hearing. In paragraph 56 Zaloga alleges he was again refused the opportunity to speak at a public hearing. In paragraph 58 Zaloga alleges he was again refused the right to speak at a public hearing. A similar allegation is made in paragraph 64. In paragraph 84 Zaloga alleges the Borough conducted a

meeting in violation of the State Sunshine Act.  In
paragraph 92 & 93 Zaloga alleges two unidentified men
were sent by the Borough to his property.  In paragraphs
95 and 96 Zaloga alleges Segilia and Mercatili attempted
to interfere with a contract of  Zalogas'. In paragraph
103 Zaloga asserts the actions alleged in paragraph 99
through 102 were done to suppress Zaologs' free speech.
Paragraph 55 through 102 all refer to allegations
occurring after the inception date of the Policy.

**LEGAL STANDARD**

    **A.**       **MOTION TO DISMISS**

When a Defendant files a motion pursuant to *Rule
12(b)(6)*, all well-pleaded allegations of the complaint
must be viewed as true and in the light most favorable to
the non-movant to determine whether "under any reasonable
reading of the pleadings, the Plaintiff may be entitled
to relief." *Colburn v. Upper Darby Township*, 838 F.2d
663, 665-66 (3[d] Cir. 1998)(citing *Estate of Bailey by
Oare v. County of York*, 768 F.2d 503, 506 (3[d] Cir. 1985),
(quoting *Helstoski v. Goldstein,* 552 F.2d 564, 565 (3d

5

Cir. 1977) (per curium)).  The Court may also consider "matters of public record, orders, exhibits attached to the Complaint and items appearing in the record of the case." *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994) (citations omitted). The Court does not have to accept legal conclusions or unwarranted factual inferences.  See *Curay-Cramer v. Ursuline Acad. Of Wilmington, Del., Inc.*, 450 F.3d 130, 133 (3d Cir. 2006): citing *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997).

## B.  INTERPRETATION OF AN INSURANCE CONTRACT

At the onset the interpretations of insurance contracts, in general, are designed to promote coverage and to fulfill the dominant purpose of providing indemnification.  In a word, each court sought to maximize coverage for the insured. *General Refractories Co v Travelers Insurance Company cases cited 1988 U.S. Dist LEXIS 14340* (E.D. 1988) Where an injured party sues an insurer, the Court must interpret the insurance contract itself, and in doing so, must apply the

6

standards for reviewing a contract. The party's true intent must be determined not only from the language, but also from all the surrounding circumstances. *United Service Auto Association v. Elitzky*, 517 A.2d 982 (1986)

Under Pennsylvania law, first and foremost, an insurance policy is a contract, subject to judicial review aimed at determining the intended meaning of the contractual language. *Lititz Mutual Insurance Company v. Steely*, 785 A.2d 975 (Pa 2001) The starting point is the express language of the policy, *Donegal Mutual Ins. Co. V. Long* 564 A.2d 937 (Pa Super 1989). A policy should be reviewed to ascertain intent of the parties as manifested by language of written instrument. *Standard Venetian Blind Co. V. American Empire Ins*., Co., 469 A.2d 563, 567 (Pa 1983) In determining whether the words in the policy are clear, the court should consider the factual context in which the words are being applied. *Madison Constr. Co. V. Harleysville Mutual Insurance Co.*, 735 A.2d 100, 106 (Pa 1999)

A common issue arising in interpretation of an insurance contract is whether such is ambiguous. Many

times this is of critical importance, as once an ambiguity is found, courts must resolve any ambiguity against the insurer as drafter and in favor of the insured. *Mohn v. American Cas. Co of Reading*, 326 A.2d 346, 352(Pa 1974); *Little v. MGIC Indem*. Corp 836 F.2d 789 (3rd Cir. 1987) A policy or provision is ambiguous if it is reasonably susceptible of different construction and capable of being understood in more than one sense. *Hutchison v Sunbeam Coal Corp*. 519 A.2d 385 (Pa 1986) and contract terms are ambiguous if they are subject to more than one reasonable interpretation when applied to a particular set of facts. *Madison Construction Co. V Harleysville Mutual Insurance Co.*, 735 A.2d 100(Pa 1999) Most jurisdiction broadly construe ambiguous coverage clauses and narrowly construe ambiguous exclusionary clauses. *Great Northern Insurance Company v Federal Insurance Company,* 2007 U.S. Dist. Lexis 62667 (W.D. 2007) Further it is for the court to determine in the first instance whether contractual language is ambiguous. *Younis Bros. Co., v. Cigna Worldwide Ins. Co* 899 F.Supp 1385, 1398 (E.D. 1995 Aff'd 91 F.3d 13 (3rd Cir. 1996)

**C DUTY TO DEFEND**

In almost every insurance policy there is a duty to defend and indemnify.  Generally a determination of whether there is a duty to indemnify must be deferred until the underlying claim is litigated to conclusion or settled. *Terra Nova Ins. Co. V 900 Bar, Inc.,* 887 f.2d 1213, 1227 (3rd Cir 1989) Further the duty to indemnify does not automatically follow from the duty to defend. *Heffernan & Co. V. Hartford Ins. Co.,* 614 A.2d 295 (Pa Super 1992) this is followed by the Federal courts. *Britamco Underwriters, Inc. V. C.J.H., Inc*., 845 F.Supp. 1090, 1094 (E.D. 1994) Further courts have uniformly held that the duty to defend is an obligation "distinct, separate and apart' from the duty to indemnify.  *Erie Ins. Exch v. Transamerica Ins. Co* 533 A.2d 1363 (Pa 1987)

The duty to defend under the policy applicable to this matter is set forth on Page 1 of 17 of Exhibit A. and provides:

> In addition to the applicable Limits of Liability set forth in ITEM 3 of the Declarations, the Insurer will have the right and duty to defend any Claim first made against any Insured for a Wrongful Act which is covered under the INSURING AGREEMENTS A or B. Of this

Policy, even if the allegations of such Claim are groundless, false or fraudulent.

The duty to defend is broader than the duty to indemnify, *Gedeon v. State Farm Mutual Auto Ins*. 188 A.2d 320 (Pa 1963) An insurer must defend against any claim **potentially** within the policy. *Air Products & Chemical, Inc., v. Hartford Accident &* Indem. Co., 25 F.3d 177, 179(3rd Cir 1994); *Biborosch v. Transamerican Ins. Co.,* 603 A.2d 1050(Pa Super 1992) Additionally a duty to defend is triggered even if only one of several claims in a complaint against an insured falls potentially within coverage *Nationwide Mutual Ins. Co v. Shank* 951 F. Supp 68(E.D. Pa. 1997, app dismissed without op., 127 F.3d 1096(3rd Cir. 1997)

In determining the duty to defend, Pennsylvania follows the rule that the obligation of the insurer to defend is fixed solely by the allegation in the underlying complaint against the insured, a rule sometimes referred to as the "four corners" rule *General Accident Ins. Co. Of America v. Allen* 692 A.2d 1089, 1091 (Pa 1997) however, if it cannot be determined from the complaint whether

there is a potentially covered claim or not, the insurer should defend until what is being alleged becomes clear. *Western World Ins. C., v. Reliance Ins. Co.*, 892 F.Supp 659 (M.D. Pa 1995) As long as the claim alleges an injury that may be within the scope of the policy, the insurer must defend its insured until the claim is confined to a recovery that the policy does not cover. *QBE Insurance Corp. v. M & S Landis Corp.*, 915 A.2d 122(Pa.Super.2007)

**COUNTER STATEMENT OF THE QUESTIONS INVOLVED**

**A. WHETHER OR NOT LETTERS REGARDING ZONING ISSUES, BUT WHICH DO NOT CONSTITUTE A LEGAL CLAIM CAN BE CONSIDERED A PRIOR CLAIM OR RELATED CLAIM UNDER TERMS OF THE POLICY?**

**ARGUMENT**

In the underlying complaint. The Plaintiff is seeking damages for civil rights violations. The inception date of the policy was August 1, 2006. All of the acts of alleged civil rights violations occurred after the inception date. Those acts include; refusing to allow the Plaintiff to exercise his first amendments rights, sending unidentified individuals on Plaintiff's property to intimidate him and attempting to interfere in Plaintiff's

contracts. Further the six letters in this case are not legal actions, are not a request for money, do not allege any civil rights violation and simply complain about enforcement of zoning laws.

Darwin, in its argument, principally relies on *Bensalem Township v. International Surplus Lines Insurance Co.*, 145 F.R.D. 387 (E. D. Pa. 1993). It is important to note that Darwin glossed over the factual allegations in that case, but those allegations become extremely important in determining the dispositive nature of that case. In *Bensalem Township*, there were two actions filed. There was a State Court action filed by the Plaintiff in the underlying action against Bensalem Township. Subsequent to that, the Plaintiff in the underlying action then filed a Federal action against the same Defendant. In reviewing both cases, the Court did a side-by-side comparison of the allegations of the State Court action and the allegations of the Federal Court action. Twenty six paragraphs in both complaints were identical. The Court noted that in comparison of the State and Federal complaints revealed that both actions involved disputes

over the development of a track of property known as Blanche Road Industrial Park.

In the present situation, there is no State Court action. There is no Complaint, or document, which essentially mirrors the Federal action filed in this matter. In fact, the complete opposite is true. The zoning objection letters, on which Darwin relies exclusively, nowhere assert Civil rights violations, nowhere assert a violation of First Amendment rights, nowhere assert substantive due process rights violation. Further, most if not all of the facts giving rise to the federal action in *Bensalem Township v. International Surplus Lines Insurance Co.*, 145 F.R.D. 387 (Eastern District Pa. 1993) occurred at the time of the state court action. This is not the case in this controversy.

To argue that the decision in *Bensalem*, where two identical lawsuits were filed, is dispositive of this case, where there is no lawsuit filed, where there are simply letters objecting to zoning decisions, where there are no alleged Civil rights violations pre-dating the inception period of the policy, and where the specific

acts that formed a basis of the civil rights violation occurred after the inception period of the policy, is simply not supported.

A case more instructive on this matter is *Bensalem Township v. Western World Insurance Co.*, 609 Fed.Supp. 1343 (E. D. 1985). In this *Bensalem* case, on September 24, 1981, the Township received a letter from the EEOC, informing them that discrimination charges had been filed. On March 22, 1982, the Township received a letter from an EEOC specialist attempting to voluntarily settle the matter. On June 9, 1982, the EEOC determined that the Township violated the ADA. On June 22, 1982, the Township notified the insurance company of the claim. The insurance company denied their claim, indicating that the claim pre-dated the period of coverage. The policy was a claims-made policy, and the period of coverage was from February 22, 1982 through February 22, 1983. The insurance company alleged that this was a prior claim, and therefore not covered under the terms of the policy.

The Court denied this assertion. The Court pointed out that in this case, this was a claims-made policy.

This is the same type of policy that exists in the present situation, that being a claims-made policy.  As stated by the Court in Footnote #2,

"a claims-made policy is the insurance market's alternative to the more common occurrence policy.  A claims-made policy protects the holder only against claims made during the life of the policy."

The Court in *Bensalem II* had to determine when the claim was first made, and determined that the September, 1981 letter from the EEOC was not a claim.  As stated by the Court, the case law generally supports a conclusion that for purposes of determining coverage under a claims-made policy, a claim is a demand for something as a right.

It is also instructive to note in Footnote #8, the Court indicated as follows:

**"Defendant argues that this conclusion violates the principle that an Insurer cannot insure against something which has already begun.  This argument misperceives the nature of a claims-made policy.  Such policies are designed to cover liabilities which the policyholder has already incurred in the sense that the occurrence giving rise to the liability has taken place, but which have not yet ripened into claims.  Thus, even though the claims may have an origin in events which took place prior to the effective date of the policy, the policyholder is insured as long as the claim is first made within the time period which the time period which the policy covers."**

The *Bensalem*, *supra* case was followed in *Home*

*Insurance Company v. the Law Office of Jonathan Deyoun* 32 F. Supp 2d 219 (E.D. 1998) where the Court discussed a claims-made policy and also stated that a claim is a demand for something as a right. The same reasoning was adopted in *Lehigh Valley Health Networks v. Executive Risk Indemnity* 2001 U.S. Dist LEXIS 73 (E.D. Pa 2001)and more recently *Penn Tank Lines, Inc v. Liberty Surplus Insurance Corporation* 2011 U.S. Dist Lexis 57331 (E. D. Pa 2011) where the court decided that a truck accident was not a claim nor were invoices for payment a claim. As stated by the Court:

**They demand payment, but not a legal remedy from Penn Tank for services rendered by FER or other contractors at the accident site. They do not assert Penn Tank's legal liability for the gasoline "pollution conditions" caused by Penn Tank's truck at the accident site.**

It is clear that the six letters are not claims. They are not demanding payment, they are not asserting legal liability or asserting any type of claim that would be considered a loss under the policy.

**B. WHETHER THE INTERPRETATION OF THE POLICY PROPOSED BY DARWIN RENDERS THE POLICY AMBIGUOUS?**

**ARGUMENT**

A review of the policy provision belie or render

ambiguous the Policy.  Section I. A. Provides:

> I.   A. Public Officials Professional liability
> The Insurer will pay on behalf of any insured,
> subject to   the Limit of Liability set forth in ITEM
> 3(a) of the Declarations, Loss which the Insured is
> legally obligated to pay as a result of any Claim
> first made against any Insured during the Policy
> Period or any applicable Extended Reporting Period
> for a Public Officials Wrongful Act which occurred on
> or after the Retroactive Date and before the end of
> the Policy Period.

The first term defined in this section is Loss.  Under II

(J) Loss is defined as:

> "Loss" means damages, pre-judgment interest, post-
> judgment interest, front pay and back pay, judgments,
> settlements, punitive or exemplary damages where
> insurable under applicable law, or other amounts that
> an Insured is legally obligated to pay as a result of
> a Claim. Loss will not include:
> (1) Defense Expense,
> (2) Non-Monetary Relief,...

What is important from this definition is that the six

letters pre-dating the inception date of the policy are

not a loss under the policy.  In fact Darwin does not even

attempt to make such an assertion.

The next relevant defined term in section above is

Claim.  Claim is defined in II (C)(as follows:

> C. Claim means:

(1) any written demand for monetary damages or
Non- Monetary Relief....,

A claim will be deemed to have been first made
when an Insured receives notice of the Claim.

Further under II. (L) Non-Monetary Relief is defined as:

II L "Non-Monetary Relief" means relief or redress in
any form other than compensatory or monetary damage,
including: the cost of complying with any injunctive,
declaratory or equitable relief, remedy or order, the
costs of compliance with the Americans with
Disabilities Act or any similar provision f federal,
state or local statutory or common law; and any award
of claimant's or plaintiff's attorney fees or costs,
whether or not provide for by statute, but only with
respect to Claims seeking such non-monetary relief.

Further Section I A set forth above, provides the claim

must be made for a Public Officials Wrongful Act.  That

term is defined as follows:

Section II O Public Officials Wrongful Act means:
(1) any actual or alleged act, error, omission,
misstatement, misleading statement or breach of
duty, including any personal Injury, by any
Insured.

(2) any actual or alleged violation of civil
rights protected under 42 USC 1982 et. Seq., or
any similar federal, state or local law, by any
Insured

(3)  any matter claimed against an Insured solely
by reason of his or her status as an Insured
during the Policy Period.

The provision instrumental to Darwins' motion is Related

Claims.

Section II P; provides:

> "Related Claims" means all Claims for Wrongful Acts
> based upon, arising out of, resulting from, or in any
> way involving the same or related facts,
> circumstances, situation, transactions or events or
> the same or related series of factual circumstances
> situation, transactions or events,, whether related
> logically, causally or in any other way.

In order to be a Related Claim the specific fact or

allegation must be a Claim and it must be for a Wrongful

Act. None of the six letter are either a claim or a claim

for a wrongful act.

Other relevant provisions of the policy are the

exclusions and notice provisions. Section III (C) (9)

provides an exclusion for any Claims based on any fact

arising prior to the inception date if it was part of any

proceeding.

Finally Section IV Conditions F provides notice

requirements. This section requires notice with full

details and under section (2) if the Insured becomes aware

of a wrongful Act which may subsequently give rise to a

claim, the Insured is required to give a description of

the Wrongful Act, the identities of the claimants, the consequences which have or may result from such act and the damages and how the Insured became fist aware.

A case that deals with this exact issue is *Lehigh Valley Health Networks v. Executive Risk Indemnity* 2001 U.S. Dist LEXIS 73. (E. D. 2001). In that case the Insurer argued that a prior action was an exclusion to the policy. The Insurer relied on similar language as does Darwin. In *Lehigh Valley* the Insurer argued that prior claims and prior lawsuits preclude coverage as they were factually related.

The Court held as follows:

**However, I find the exclusions, as applied to the facts here, are ambiguous and should be construed against the drafter, Travelers...Travelers interpretation of the policy it drafted casts too wide a net and captures too many claims in its exclusion. As counsel for Travelers admitted to this court at the status conference, there must be some reasonable limitation to the succession of claims which could be excluded under the Travelers policy. Courts have already noted the word "related" does not encompass every conceivable logical relationship. " A relationship between two claims might be so attenuated or unusual that an objectively reasonable insured could not have expected that they would be treated as a single claim**

**under the policy, (see cases cited)**

In analyzing this matter, it is important to analyze the six letters set forth in the underlying complaint. These letters are, in fact, the only actions pre-dating the inception period of the policy.  It is ironic that the bulk of the actions, including any of the actions giving rise to Civil rights violations, all occur after the inception date of the policy.

The six letters do not represent a Loss nor a Claim under the policy.  Under II.(C), Subsections 2-6 do not apply.  The only applicable condition defining these as a claim would be under Section 1.  Certainly, there has never been in these six letters a written demand for monetary relief.  The question is whether or not there has been a demand for non-monetary relief.  In order to determine that, one needs to review the section of non-monetary relief, and it is important to note that "relief" in this term is a legal term meaning some sort of redress from a tribunal.  How do we know this?  As you read the definition of non-monetary relief, it provides for relief and redress, and then includes examples such as cost

complying with injunctive, declaratory, equitable relief remedy or orders or the cost of compliance with Americans with Disability Act, or similar statutes.  It is clear from this that relief and/or redress for non-monetary relief is a legal term signifying an action or an order required by some tribunal.

Also rendering the policy ambiguous are the exclusion provisions.  Specifically provision III (C) (9) excludes from coverage any event, fact or wrongful act prior to the Inception Date raised in arbitration, mediation, etc. The purpose of this is abundantly clear. It excludes potentially related claims that may have arisen prior to the inception date of the policy, but it provides a clear requirement that they be part of some proceedings.  In this matter, there is no proceeding, but simply letters written.  To argue that the above cited section excludes related claims that are brought through tribunals, and that the terms "related claim" are not covered under the policy, is simply inconsistent and ambiguous.  To accept Darwin's interpretation of this policy, then the above exclusion becomes superfluous and

not necessary, therefore, rendering the policy ambiguous.

The other provisions of the policy are the notice provisions at IV F, which are the conditions of the policy. Specifically Subsection (2)which references Wrongful Acts which may subsequently give rise to a claim. Darwin, in its own notice provision, accepts that there may be wrongful acts which may not be claims at the time they are wrongful acts, but may subsequently give rise to a claim. Under those notice provisions, the insured is required to give a description of the wrongful act, the consequences that have resulted or may result, and the damages. The irony  in this case, if you accept the argument of the insurer than in 2005, the Borough of Moosic was required to give notice that in 2007, it would preclude the Plaintiff in the Underlying Action from speaking at certain public meetings, that on December 22, 2008 the Borough violated the Sunshine Act and in 2009 the Borough would send unidentified individuals on the Plaintiff's property and attempt to interfere with the contract pf the Plaintiff.  The absurdity is clear.  The questions is whether or not the absurdity is a result of

the policy language or of the interpretation now espoused by Darwin.

Setting forth Darwin's position in a hypothetical more accurately details the unreasonableness of their position. Assume, for example, a neighbor in the Borough of Moosic, in writing, complained in 2005 on six occasions to the Borough about the police not adequately patrolling his neighborhood. Assume, in 2010, that the same individual has been arrested by the police, and in 2011, filed a civil rights action against the police alleging excessive force. Included in the civil rights complaint was a reference to his complaints in 2005. Using the interpretation given by Darwin, the related claim first arose in this matter when the individual wrote letters to the Borough complaining about improper police patrols. That type of interpretation is simply ludicrous. It does not represent the intent of the parties in negotiating a contract, and is so all encompassing and so broad and casts such a wide net the policy is rendered ambiguous and should be construed against the drafter.

### C. WHETHER OR NOT THE DOCTRINE OF COLLATERAL

**ESTOPPEL BARS THE PRESENT ACTION BASED UPON A CASUAL REFERENCE IN MOTION TO DISMISS AND AN ORDER IN THE UNDERLYING ACTION?**

**ARGUMENT**

Darwin makes the assertion that the decision in the underlying action and the accompanying motion somehow precludes litigation of the present action. It should be noted that this position is certainly without merit. In the case of *Yonkers v. Donora Borough*, 702 A.2d 618 (Pa. Cmwlth. 1997), the Court indicated that collateral estoppel, also known as issue preclusion, forecloses litigation of factual or legal issues which were actually litigated and necessary to the judgement of a prior action involving the same parties or its privities. Certainly, in the underlying action, the issues presented in this current controversy were not presented, were not discussed, were not briefed, and in fact, were not ruled on, and were not necessary to the decision in the underlying action. In *Lehigh Valley Health Network, Et Al. v. Executive Risk Indemnity, Inc.*, 2001 U.S. Dist. LEXIS 73 (E.D. 2001), the insurer attempted to make the same or a similar argument. The argument was similarly

dismissed.  In Footnote number 8,  Court held:

"I also find no merit in Travelers' argument that the Third Circuit has held that the Angelico claims arose out of the Toonder claims within the meaning of the policy exclusions.  See *Angelico v. Lehigh Valley Hospital*, 184 F.3d 268, 277 (3d Cir. 1999) ("[Angelico's section 1983] claim arises out of the litigation of a related state court suit that was resolved during the course of this litigation.").  The Third Circuit's comment was nothing more than a passing description of Dr. Angelico's civil rights claim and was not intended as a conclusion of law. Indeed, the issue of Traveler's policy exclusions was not even before the court."

A passing comment in the underlying action, either in a motion or a brief, is not collateral estoppel of a dispositive fact in a subsequent action.  The determination and decision needs to be crucial in the prior action.  It needs to be decided in the prior action. It needs to be necessary for a determination in the prior action, and it needs to actually be litigated.  Of course it is without dispute that none of this occurred in the underlying action. The argument that this matter is collaterally estopped by passing comments in the Underlying Action simply has no merit.

**D. WHETHER THE PLAINTIFF IN THIS MATTER HAS A SUFFICIENT CLAIM AT THIS POINT TO ESTABLISH BAD FAITH UNDER THE TERMS OF THE POLICY.**

**ARGUMENT**

It goes without saying that if the Court finds that this claim is excluded either under the terms of the policy or in an exclusion provision, then of course the claim for bad faith will then fail. In order to review this claim for bad faith it is important to relate the factual situations. Upon receiving the underlying action, the Plaintiff forwarded that action to the insurance company. The insurance company reviewed the action for six months, hired counsel, and then disclaimed coverage. The insurance company failed to exercise their duty to defend, even though that is a broad obligation encompassing all potential claims. Further, the insurance company simply then ignored the insured and failed to file its own declaratory judgement action, but forced the insured a declaratory judgement action to determine its rights under this policy.

The general standards Pennsylvania courts have adopted have been accepted by the Federal courts in interpreting cases under 42 Pa. C.S. 8371 and the standard is: To recover under a claim of bad faith, the Plaintiff

must show the Defendant did not have a reasonable basis for denying benefits under the policy and the Defendant knew or recklessly disregarded lack of reasonable basis in denying the claim. *Echevarria v. Unitron Direct Insurance Co.*, 2-8384 (E.D. Pa. March 17, 2003); *Klinger v. State Farm Mutual Insurance Co.*, 115 F.3d 230 (3d Cir. 1997) It is important to note that at this stage of the proceeding, all of the allegations of the complaint are to be admitted. Further, pursuant to Federal law, the Plaintiff is only required to cite a short, concise statement of this fact. Plaintiff has alleged that Defendant issued a disclaimer for coverage of a civil rights action, failed to properly investigate that action, ignored the genesis of the complaint, and issued the disclaimer based upon an alleged prior related action. The bad faith of the insurance company to be considered is numerous. They failed to discuss or consider the fact that the bulk of the allegation in the Underlying Action involves allegations that occur well after the inception period of the policy. They fail to discuss the fact that the six letters sent were not losses under the terms of the

policy, and were not claims under the terms of the policy. Further after Judge Munley limited Plaintiff's claims in the Underlying Action to those occurring after December 2008, Darwin still refused to defend. At this juncture, a determination as to whether or not there was bad faith is simply not appropriate as that is a factual determination to be made after discovery.

**CONCLUSION**

Based on the foregoing the Motion to Dismiss should be denied.

**Respectfully submitted**


**S/ John J. Brazil**
**John J. Brazil, Esquire**
**DATE:  December 29, 2011**

## Certificate of Service

I, John J. Brazil, Jr., Esquire, certify that on the 29th day of December, 2011, I electronically filed the foregoing with the Clerk of Courts using the ECF System, which will send notification of such filing to all counsel of record.

Respectfully submitted,

 /s/John J. Brazil
John J. Brazil Jr., Esquire
Attorney for Plaintiffs