## THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **BOROUGH OF MOOSIC, et al.** | : | |
| | : | |
| **Plaintiffs** | : | |
| v. | : | **3:11-cv-1689** |
| | : | **(JUDGE MARIANI)** |
| **DARWIN PROFESSIONAL** | : | |
| **UNDERWRITERS, INC., et al.** | : | |
| | : | |
| **Defendants** | : | |

### MEMORANDUM OPINION

This matter comes before the Court as a Complaint for Declaratory Judgment (Doc.

1) involving Plaintiffs Borough of Moosic ("Borough"), Moosic Borough Council, Moosic

Borough Planning Commission, Moosic Borough Zoning Board of Adjustment, Joseph

Mercatili, Joseph Dente, Thomas Harrison, Bryan Fauver, and James Durkin (collectively,

"Plaintiffs"), regarding coverage under an insurance policy issued to them by Defendants

Darwin Professional Underwriters, Inc. and Darwin Select Insurance Company (collectively,

"Defendants"). Defendants filed a timely Motion to Dismiss pursuant to FED. R. CIV. P.

12(b)(6) (Doc. 7), and for the reasons set forth below, Defendants' motion will be granted.

### BACKGROUND

On September 8, 2011, Plaintiffs filed a Complaint against Defendants seeking a

declaratory judgment on coverage to which they allege that they are entitled under a Public

Officials' Professional Liability Insurance Policy ("POPL Policy") (Doc. 1). The events giving

rise to the present dispute involve matters from an Underlying Action ("Underlying Action")

between Edward and Jean Zaloga (together, the "Zalogas"), and Plaintiffs in the present

declaratory judgment suit.[1]  The Underlying Action, currently pending and captioned with

this Court as *Zaloga v. Borough of Moosic*, Case No. 3:10-cv-2604, specifically asserts that

Plaintiffs injured the Zalogas by: (1) violating the Zalogas' free speech activities by refusing

to allow them to speak at public meetings; (2) violating 28 U.S.C. §1983 by retaliating

against the Zalogas for exercising their First Amendment right to free speech, including

interference with contractual rights and sending surveyors to the Zalogas' property as an

intimidation tactic; (3) violating Substantive Due Process rights based upon the alleged

failure to allow the Zalogas to speak at public hearings; (4) engaging in a conspiracy

pursuant to 28 U.S.C. § 1983 based on the same allegations; and (5) engaging in a civil

conspiracy.  The Zalogas also assert a claim for adverse possession.

Plaintiffs contend that since "August 1, 2006 the Defendants provided Public Officials

Professional Liability insurance to the Plaintiffs which provided protection for any actual or

alleged violation of civil rights." (*See* Pls.' Compl. at ¶ 19, ECF Dkt. 1 (citing POPL Policy,

Exhibit A).)  Plaintiffs assert that "[o]n or about December 23, 2010 the Plaintiffs received a

copy of the [Underlying Action] filed by Zalogas's (sic)." (*Id.* at ¶ 26.)  Plaintiffs further

assert that "[a]t all relevant times, the policy issued by Defendants was in full force and

---

[1] The Underlying Action alleges that the Zalogas' home is located
immediately adjacent to Jack Williams Tire Company, Inc. ("Jack Williams"),
and that beginning in or around 2005, the Zalogas learned that Jack Williams
planned to expand its operations to include the manufacturing of certain
products.   The Zalogas then sought to challenge the proposed expansion and
what the Zalogas believed to be multiple zoning violations committed by Jack
Williams.   The Zalogas' Complaint asserts that the Borough unconstitutionally
prevented the Zalogas from speaking at public meetings and retaliated against
them as a result of their challenge to the Jack Williams expansion.

effect." (*Id.* at ¶ 27.) On June 2, 2011, Defendants notified Plaintiffs that they would not defend or indemnify them for the claims arising from the Underlying Dispute. (*See* Coverage Declination Letter of June 2, 2011, ECF Dkt. 1-3.)

Plaintiffs explain that "[t]he essential basis for the denial" offered by Defendants "is that certain actions in 2005 and 2006 which predated the inception date of the policy were related acts and therefore the claims predated the policy." (*Id.* at ¶ 32 (citing Coverage Declination Letter).) These "certain actions in 2005 and 2006" include the filing of several petitions by the Zalogas and their neighbors with the Borough, and the filing of a Mandamus Complaint ("Mandamus Complaint") with the Court of Common Pleas on February 10, 2006. (*See* Zaloga Letters, ECF Dkt. 10-3 through 10-8; Mandamus Complaint, ECF Dkt. 10-9.) Plaintiffs maintain that their properly submitted claim regarding the Underlying Action falls within the inception period of the POPL Policy, that the previously submitted petitions and Mandamus Complaint do not constitute "claims" as they are defined under the POPL Policy, and that Defendants' failure to defend and indemnify them is a violation of the POPL Policy's express provisions.

## STANDARD

This matter is presented to the district court as a motion to dismiss. In light of the Supreme Court's decisions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 433 (2007), and *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009), the Middle District of Pennsylvania has adopted the following standard by which to treat motions to dismiss. "[T]o survive a motion to

dismiss, a complaint must contain sufficient factual matter, accepted as true to 'state a claim that relief is plausible on its face.'" *Iqbal*, 129 S.Ct. at 1949 (citing *Twombly*, 550 U.S. at 570). In *Iqbal*, the Court emphasized that "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 1950. Furthermore, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (citation omitted); *McTernan v. City of York*, 577 F.3d 521, 530 (3d Cir. 2009).

District courts confronted by a motion to dismiss should engage in a two-step analysis. First, the district court should accept all well-pleaded facts as true, but may reject mere legal conclusions. Second, the district court should then determine whether the facts, as asserted, establish a "plausible claim for relief." *Iqbal*, 129 S.Ct. at 1950. Thus, a complaint must "show" an entitlement to relief with facts, as a mere allegation that a plaintiff is entitled to relief is insufficient to withstand a motion to dismiss. *See Philips v. Co. of Allegheny*, 515 F.3d 224, 234-35 (3d Cir. 2008). As the Supreme Court instructed in *Iqbal*, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 129 S.Ct. at 1949. This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*; *see also McTernan, Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009).

## DISCUSSION

A proper adjudication of this dispute requires the Court to address two distinct issues: (1) the proper substantive law applicable to this matter; and (2) whether the claims in the Underlying Action, although first made against the insured and reported in the policy period, are nonetheless untimely because they constitute "related claims" to the written petitions by the Zalogas or their Mandamus Complaint, which were first made against the insured prior to the POPL Policy inception period, in light of the policy's provisions that a claim related to an earlier claim must be treated as a single claim made when the earliest of the related claims was first made.

### A. Applicable Substantive Law

A district court exercising diversity jurisdiction is "bound by the choice-of-law rules of the state in which it sits." *Travelers Cas. and Sur. Co. v. Ins. Co. of N. Amer.*, 609 F.3d 143 (3d Cir. 2010)(citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed.2d 1477 (1941)). "In Pennsylvania, choice of law analysis first entails a determination of whether the laws of the competing states actually differ. If not, no further analysis is necessary." *Wilson v. Transport Ins. Co.*, 889 A.2d 563, 571 (Pa. Super. 2005). Furthermore, "[i]f we determine a conflict is present, we must analyze the governmental interests underlying the issue and determine which state has the greater interest in the application of its law." *Id.* A "choice of law" analysis applied only to conflicts of substantive

law." *See Ferraro v. McCarthy-Pascuzzo*, 777 A.2d 1128 (Pa. Super. 2001). As the

Superior Court held in *Ferraro*:

> Substantive law is the portion of the law which creates the rights and duties of
> the parties to a judicial proceeding, whereas procedural law is the set of rules
> which prescribe the steps by which the parties may have their respective
> rights and duties judicially enforced.

*Ferraro*, 777 A.2d at 1137.

"Under the flexible conflict methodology approach to insurance contract cases, which

was set forth by our Supreme Court in *Griffith v. United Air Lines, Inc.*, 416 Pa. 1, 203 A.2d

796 (1964), the court must apply the law of the state having the most significant contacts or

relationships with the contract and not the underlying tort." *Wilson*, 889 A.2d at 571.

Here, both parties employ Pennsylvania substantive law in their briefs in support of,

and in opposition to, the Motion to Dismiss, and neither party raises a challenge to such an

application.[2] In addition, the POPL Policy has substantial contacts with the Commonwealth

of Pennsylvania, as the insured entities are Pennsylvania residents and municipal

corporations. Furthermore, the Underlying Action is being litigated in United States District

Court for the Middle District of Pennsylvania. Although the location of the underlying tort is

a minimal factor in this analysis, the other contacts discussed herein are sufficient to

establish the proper application of Pennsylvania law.

---

[2] It is unclear from the submissions of the parties as to whether the
POPL Policy contains a choice of law provision.

6

### B. Assertion of a Timely "Related Claim" Under the POPL Policy

In deciding whether a timely "claim" was asserted under the POPL Policy, the Court

first looks to the express language of the POPL Policy, which reads as follows:

> The Insurer will pay on behalf of any Insured, subject to the Limit of Liability
> set forth in ITEM 3(a) of the Declarations, Loss which the Insured is legally
> obligated to pay as a result of any Claim first made against any Insured
> during the Policy Period or any applicable Extended Reporting Period for a
> Public Officials Wrongful Act which occurred on or after the Retroactive Date
> and before the end of the Policy Period.

(POPL Policy at ¶ I(A).)

It is undisputed that the complaint filed in the Underlying Action on December 23,

2010 constitutes a "claim" as it is defined under the POPL Policy; however, the dispositive

question is whether the various petitions filed by the Zalogas, beginning on August 5, 2005,

or their Mandamus Complaint filed on February 10, 2006, constitute "related claims" such

that the policy's requirement that all related claims be treated as a single claim made when

the earlier of such related claims was first made, operates to exclude the Underlying Action

from coverage as an untimely claim.

The POPL Policy defines a "claim" to be, in pertinent part, "any written demand for

monetary damages or Non-Monetary Relief." (See POPL Policy at ¶ II(C)(1).) A "claim" is

further defined as "any civil proceeding in a court of law or equity, including any appeal

therefrom, which is commenced by the filing of a complaint, motion for judgment, or similar

proceeding." (POPL Policy at ¶ II(C)(3).) "A claim will be deemed to have been first made

when an Insured receives notice of the Claim." (*Id.* at II(C).)   "Non-Monetary Relief" is also

a defined term within the Policy and means:

> relief or redress in any form other than compensatory or monetary damages, including: the costs of complying with any injunctive, declaratory or equitable relief, remedy or order; the costs of compliance with the Americans with Disabilities Act or any similar provisions of federal, state or local statutory or common law; and any award of claimant's or plaintiff's attorneys fees or costs, whether or not provided for by statute, but only with respect to Claims seeking such non-monetary relief.

(POPL Policy at ¶ II(L)(emphasis added).)

It is clear that the Mandamus Complaint filed with the Court of Common Pleas to

compel Plaintiffs to comply with the Borough's laws is a written demand seeking non-

monetary relief, and constitutes a "complaint" filed in a civil action; accordingly, it qualifies

as a "claim" under the express terms of the POPL Policy. The Mandamus Complaint

specifically alleges that Plaintiffs failed to address certain zoning violations occurring on the

Jack Williams property. (*See* Mandamus Compl. at ¶¶ 7-9.) The Zalogas requested that

the Court of Common Pleas compel Plaintiffs to comply with Borough ordinances that

required them to investigate the alleged zoning infractions. (*See* Mandamus Compl. at ¶¶

9-11.) The relief sought by the Zalogas in the Mandamus Complaint unequivocally

addressed the alleged failure of Plaintiffs to properly administer zoning laws. The

Mandamus Complaint initiated a civil action, was written, and sought non-monetary relief

from the Court; accordingly, it constitutes a "claim" under the Policy.

In deciding a motion to dismiss, the Court must accept all well-pleaded facts as true. *See Iqbal*, 129 S.Ct. at 1950. In the present matter, Plaintiffs' Complaint sets forth that the inception date for the POPL Policy is August 1, 2006, while Defendants argue that the inception date is August 1, 2010. Although a copy of the POPL Policy submitted by Plaintiffs with their Complaint indicates that August 1, 2010 is the policy's inception date, the Court will assume, without deciding, that the August 1, 2006 date offered by Plaintiffs is the inception date for the limited purpose of deciding this motion.[3] (*See* POPL Policy Declarations, ECF Dkt. 1-2.)

Assuming that August 1, 2006 is the inception date for the POPL Policy, relief is unavailable for Plaintiffs because the Mandamus Complaint was filed by the Zalogas in the Court of Common Pleas on February 10, 2006. The Zalogas' Mandamus Complaint was filed six months prior to the commencement of the period for which coverage would be afforded under the POPL Policy, assuming an August 1, 2006 inception date. This finding obviates any need for the Court to determine whether the various petitions submitted by the Zalogas and their neighbors also constitute "claims."

Given that the Mandamus Complaint constitutes a "claim" under the POPL Policy, the question becomes whether the claim constitutes a "related claim" to the one filed in the Underlying Action. Under the POPL Policy, a "related claim":

---

[3] The face of the POPL Policy indicates an inception date of August 1, 2010. If it were necessary to reach a determination of the actual inception date of the policy, the Court would find August 1, 2010 to be that date; however, as state above in the body of this opinion, even adopting Plaintiffs' assertion that the policy inception date is August 1, 2006, Plaintiffs' claim fails.

9

means all Claims for Wrongful Acts based upon, arising out of, resulting from, or in any way involving the same or related facts, circumstances, situations, transactions or events or the same or related series of facts, circumstances, situations, transactions or events, whether related logically, causally or in any other way.

(POPL Policy at ¶ II(P).)

The POPL Policy further requires that "[a]ll Related Claims will be treated as a single Claim made when the earliest of such Related Claims was first made, or when the earliest of such Related Claims is treated as having been made in accordance with CONDITION F(2), whichever is earlier." (*See* POPL Policy at ¶ IV(F)(4).)

In Pennsylvania, the phrase "arising out of" or "arising from" "means causally connected with, not proximately caused by." *See McCabe v. Old Republic Ins. Co.*, 425 Pa. 221, 224, 228 A.2d 901 (1967); *see also Manufacturers Casualty Ins. Co. v. Goodville Mut. Casualty Co.*, 170 A.2d 571, 573 (Pa. 1961)("construed strictly against the insurer, 'arising out of' [an insurance policy] means causally connected with, not proximately caused by").

These principles were most recently re-affirmed by the Third Circuit in *Allstate Property and Cas. Ins. Co. v. Squires*, 667 F.3d 388 (3d Cir. 2012), in which the court held that an insured's injuries "arose out of" covered usage of a motor vehicle. The Third Circuit found that "the formulation 'arising out of' is now well-settled in Pennsylvania, and has been applied in various insurance law settings." *Squires*, 667 F.3d at 391. In coming to its conclusion that certain injuries arose out of a chain of events involving a motor vehicle

10

crash, the Third Circuit reasoned that a litigant need only show "but for" causation to adequately establish that one claim "arose out of" another. *See id.* at 392.

In *Bensalem Tp. v. Int'l Surplus Lines Ins. Co.*, No. 91-5315, 1992 WL 142024 (E.D. Pa. June 15, 1992), rev'd on other grounds, 38 F.3d 1303 (3d Cir. 1994), the district court addressed a claim for declaratory relief concerning an insurance company's denial of a claim arising under its public officials and employees liability insurance policy. The court was presented with a question as to whether two separate lawsuits, one filed in federal court and the other filed in state court, arose from the same circumstances, thus triggering an exclusion in the policy. *See id.* at *2. The court held that although the legal theories set forth in each suit were dissimilar, the underlying facts and circumstances involving the alleged interference of the development of a parcel of real property were the same.[4] *Id.*

In *Lehigh Valley Health Network v. Executive Risk Indemn., Inc.*, No. 1999-5916, 2001 WL 21505 (E.D. Pa. Jan. 10, 2001), the court held that suits against a hospital brought by two separate plaintiffs, involving two separate claims, although involving some factual overlap, were "too dissimilar and the nexus between them too attenuated for coverage to be

_____

[4] Although the Order in *Bensalem* was reversed on the grounds that the district court failed to allow discovery on the issue of whether new language in a prior litigation exception clause was inconsistent with the reasonable expectations of the insured, such a situation does not arise in the present matter because the policy language remained unchanged, and the parties have not requested discovery. Here, discovery is only requested at the conclusion of Plaintiffs' Brief in Opposition to the Motion to Dismiss, where Plaintiffs argue that discovery is needed on the question of bad faith. Given the Court's ability to find, as a matter of law, that Plaintiffs failed to state a claim for which relief can be granted, the claim for bad faith, and any discovery that would tend to substantiate such a claim, is unnecessary, and could have no effect on the merits of this case, which turn on the provisions of the POPL Policy. A finding of bad faith would be inconsistent with the present holding that, as a matter of law, Defendants are not required to defend or indemnify Plaintiffs.

barred as related to a prior claim or litigation." *Id.* at *9.  In that matter, one doctor sued the

defendant hospital to compel it to "consider his candidate for a manpower slot," while the

other doctor sued the hospital alleging "denial of a fair hearing for his application for [a]

manpower slot." *Id.*  The court held that the two "claims differ to a sufficient degree that

they are not reasonably related to preclude coverage." *Id.*  Although the dispute focused on

the same position, one suit involved the initial creation of the position, while the other

involved the placement of a particular physician into that position.  Importantly, two separate

plaintiffs asserted two separate injuries, and represented two separate interests.[5]

---

[5] The view expressed by the Court in *Lehigh Valley, supra* at 6, that
"there must be some reasonable limitation to the succession of claims which
could be excluded under the Travelers policy," resonates with this Court. In
particular, the definition in the policy at issue here of a "related claim"

> (Related Claims means all Claims for Wrongful Acts based on,
> arising out of, resulting from, or in any way involving the same
> or related facts, circumstances, situations, transactions or
> events or the same or related series of facts, circumstances,
> situations, transactions or events, whether related logically,
> causally or in any other way)

has the potential to bring about the exclusion from coverage of all claims
occurring between the same parties, in perpetuity. This might be the case
where a claim, although made against the insured and reported in the policy
period, has some slight or tangential connection to a prior matter involving
the same parties occurring outside the policy period for which no claim was
timely made or, if occurring during the policy period, was not made "as soon
as practicable." (See Policy Section IV, Subsection F(2).)  Thus, the
"related claims" definition in the policy must be interpreted and applied so
as to avoid rendering the policy's coverage a nullity. After all, the insured
did not pay a premium for an illusory contract of insurance.

But because in this case, the "relatedness" of the claims set forth in
the Underlying Action, for which the Plaintiff herein seeks coverage, are so
clearly related to the claims made in the Zalogas' Mandamus Complaint filed
February 10, 2006, and are indeed a virtually seamless continuation of the
dispute set forth in that action, my determination must be that no coverage
exists for the Plaintiffs in the Underlying Action. The claims made there are
related to the earlier claim made in the Zalogas' Mandamus Complaint which
was first made against the insured prior to the POPL Policy inception date.

Informing the *Lehigh Valley* court's decision is the widely cited California Supreme

Court holding in *Bay Cities Paving & Grading, Inc. v. Lawyers' Mut. Ins. Co.*, 5 Cal.4th 854

(1993), which provides guidance on the construction of the term "related" as it is generally

used in the context of insurance policies. "[T]he term 'related' as it is commonly understood

and used encompasses both logical and causal connections. Restricting the word to only

causal connections improperly limits the word to less than its general meaning." *Id.* at 873.

The court further held that "'[r]elated is a broad word, but it is not therefore a necessarily

ambiguous word," and is not necessarily "limited only to causally related acts." *Id.* The

principles articulated in *Bay Cities* are recognized by the Ninth Circuit in *Financial Mgmt.*

*Advisors, LLC v. Am. Int'l Specialty Lines Ins. Co.*, 506 F.3d 922 (9th Cir. 2007)(recognizing

one claim flowing from several acts), and by the Tenth Circuit in *Berry & Murphy, P.C. v.*

*Carolina Cas. Ins. Co.*, 586 F.3d 803 (10th Cir. 2009)(finding claims logically connected

because they arose out of the same transaction, involved the same parties, and resulted in

a single injury).

The claims first set forth in the Mandamus Complaint averred that Plaintiffs failed to

enforce Borough zoning ordinances, and that such a failure infringed upon the rights of the

Zalogas. Furthermore, the Mandamus Complaint sought to remedy this perceived failure to

enforce zoning laws by forcing the municipality to investigate the Zalogas' allegations. It

was filed after the Borough seemingly failed to address any of the Zalogas' complaints,

which were voiced in numerous petitions prior to the filing of the Mandamus Complaint.

The Underlying Action was rooted in the same zoning dispute, concerned the same

real estate (the Jack Williams and Zaloga properties), concerned the same principal parties

(the Zalogas, Borough, and James Durkin), and involved Plaintiffs' alleged refusal to

address Zalogas' complaints regarding particular zoning violations. The Underlying Action

was the direct consequence of the Zalogas' belief that some or all of the defendants in that

matter failed to remedy the issues raised in the Mandamus Complaint. It also encompasses

the alleged refusal by the Borough to permit the Zalogas to challenge what they perceived

was the Borough and its representatives' inaction on these matters. But for the zoning

dispute that was the subject of the 2006 Mandamus Complaint, which continues between

the Zalogas and the Plaintiffs herein, there would be no basis for the Underlying Action.

Moreover, the Underlying Action is causally related to the Mandamus Complaint in that it

forms the basic premise on which all of the subsequent claims are based. For instance, the

Zalogas accuse Plaintiffs of First Amendment violations, including a refusal to permit the

Zalogas to speak in a public forum, and free-speech retaliation. These alleged violations

are directly related to the earlier zoning issue presented in the Mandamus Complaint. In

fact, the Zalogas' complaint in the Underlying Action specifically alleges that the matters are

related:

> As part of Plaintiffs' repeated public protests and opposition to Defendants'
> constant willful and intentional refusal to investigate zoning violations and
> comply with the law, Plaintiffs engaged in the following constitutionally-
> protected free speech activities: (a) Plaintiffs sent numerous petitions, signed
> by a substantial number of Plaintiffs' neighbors, to Defendants to publicly
> protest Jack Williams Tire and the Defendants; (b) Plaintiffs attended

14

numerous hearings held by the Council and Commission and voiced opposition in protest to the actions and conduct of Jack Williams Tire and the Defendants; (c) Plaintiffs attended numerous hearings held by the Lackawanna County Planning Commission to voice opposition in protest to the actions and conduct of Jack Williams Tire and the Defendants.

Underlying Action Compl. at ¶ 108, ECF Dkt. 1.

As a result of Plaintiffs' constitutionally-protected free speech activities, Defendants willfully and intentionally retaliated against Plaintiffs by permitting Jack Williams Tire to breach Borough zoning ordinances, by frustrating Plaintiffs' ability to speak freely at publicly held hearings, by approving a series of requests submitted by Jack Williams Tire that harmed Plaintiffs['] property rights, and by refusing to approve a modification that favorably affected Plaintiffs' use and enjoyment of their property.

Underlying Action Compl. at ¶ 109.

Defendants repeatedly suppressed and willfully and intentionally interfered with Plaintiffs['] ability to publicly protest Jack Williams Tire and the Borough at Council and Commission hearings, which were held open to members of the public.

Underlying Action Compl. at ¶ 117.

Defendants willfully and intentionally interfered with Plaintiffs['] ability to speak and present information at a public hearing about the Berm modification, a hearing initiated at the request of Judge Mazzoni, by providing ineffective notice to Plaintiffs in violation of the Pennsylvania Sunshine Law.

Underlying Action Compl. at ¶ 119.

The alleged refusal to allow the Zalogas an opportunity to speak at public zoning

board meetings, and certain retaliatory tactics, including a threat to interfere in a contract

between the Zalogas and a local prison, arise directly from the zoning dispute which began

in August 2005, and definitively became a "claim" under the terms of the POPL Policy at the

time of the filing of the Mandamus Complaint. It is also notable that in their Motion to

Dismiss the Underlying Action, Plaintiffs argue that the Zalogas' complaint "ar[ose] from

their ownership of property in the Borough of Moosic and an ongoing dispute involving the

adjacent property owner Jack Williams Tire and Auto Service Center." *See* Defs.' Br. in

Supp. of Mot. to Dismis at 2, Underlying Action, ECF Dkt. 12.

Accordingly, the present action constitutes a "related claim" under the POPL Policy,

as it is inextricably linked, and causally connected to, the facts, circumstances, and legal

issues presented in the Mandamus Complaint. Given that the Mandamus Complaint

constitutes a "related claim" that was filed prior to the inception date of the POPL Policy,

Defendant is not required to defend or indemnify Plaintiff in the Underlying Action.

## CONCLUSION

For the reasons set forth in this memorandum opinion, Defendants' Motion to

Dismiss will be granted. A separate Order will follow.

DATE: June 29, 2012

Robert D. Mariani
United States District Judge